21-1760. Good morning and may it please the court. My name is Dan Perez. I'm a member of the court's CJA panel. I represent the defendant Lucio Celli in this court. I did not and do not represent Mr. Celli below. I want to begin my comments this morning by being very clear that this was an extremely serious crime. This was an abhorrent crime. I say that as an officer of this court. I say that as an officer of, among others, the District Court of New Jersey. It is also a very sad case. Because not long ago, Lucio Celli was a teacher in the New York City public school system. He's a graduate of NYU with a degree in social studies and music. And it is clear from the record of this case and as the District Court set forth its sentencing in abundant detail, what drives his criminal, drove his criminal conduct was an illness. He has a personality disorder condition that causes him to misperceive reality. How does that relate to the particular issues that are raised here about the pre-trials out in the supervised release conditions? So the supervised release conditions, the special conditions of supervised release were the whole kit and caboodle of the sentencing. There was no question that he was going to go to jail. Because the government conceded, the government agreed in the plea agreement not to oppose his request for time served. And it is not dispositive at all. And it is not to suggest that he should be held to a lower standard at all. But it does inform the approach in this case of the threshold question, whether the special conditions of supervised release were orally imposed with appropriate precision. They were negotiated, weren't they? Your Honor, at the beginning of the sentencing proceeding, there were three competing lists of special conditions of supervised release. There were seven, really there were eight special conditions set out in the plea agreement, one of which, the first of which was the mandatory condition that he not commit any further crimes. Defense counsel submitted a memorandum that contained, I believe, seven slightly modified special conditions of release. Probation in the sentencing recommendation said we object to what's in the plea agreement and what's in defense counsel's letter because of Carlinio, the conditions are vague and overbroad. They afford, they accord excessive discretion to probation. And then at the beginning of the sentencing hearing, the district court distributed this Exhibit A document, which while I can't show you the actual document, I believe that document number 177 is the cleaned up 17 paragraph 1150 word document that basically compiled these competing lists of special conditions of supervised release. The issue in this appeal, the threshold and frankly the real problem in this appeal, is that the district court incorporated those 17 special conditions by reference, but did not orally impose them. And under- What would happen? Your first point, you got two points before we get to the reasonableness of the condition. You're now on the procedural point. Yes, your honor. You weren't orally spoken. Yes, your honor. All right, so if you were right, is the remedy to go back and just orally say them to him? Thank you for that question, your honor. That's an excellent question and it is certainly within this court's discretion. What I mean by that is, I had thought about that before today. The court has in similar cases sent back remanded cases simply to read the special conditions. The court has also sent back cases to district courts to re-sentence defendants on the special conditions of release, and that is what I would propose this court do in this case. To re-sentence? To re-sentence him. But not to re-plead? No, not to re-plead because the only deficiency in this sentencing, the only procedural deficiency in this sentencing relates to the special conditions of supervised release. It's got 31 conditions of release. The only issue is the 17 special conditions. And of those, we object on appeal to, I believe, five or six of them as they That's the second point, but we're still on the procedural point. Yes, so if Now, is the procedural point here on plain error review? No. It's not. No, it is not. It is in our, actually, your honor, under your honor's panel decision in Dodd and under Washington, it is de novo review. It could be relaxed plain error, as I said in my main brief, but when I sat down to draft There was no objection to it. There was no objection to it, but there was no notice of it either under the law of this circuit. Not advance notice. There was no notice during the sentencing itself. If you look at these cases, the notice is at the sentencing itself. It's the oral imposition that is the notice. Counsel got physically Exhibit A, right? Mr. Chelley got Exhibit A. He was in the courtroom. Okay, and counsel saw it, presumably. Yes, counsel said it. And counsel didn't say, judge, we're seeing this for the first time in this finished form. We need a day or an hour or something. He didn't say anything about more time, did he? That's correct as to defense counsel. Rule 43A does not apply to defense lawyers. Rule 43A applies to defendants. He's the lawyer, though. He's representing. So when we talk about plain error, we're talking about whether the counsel objected. We don't expect the client to know all about Rule 43A. We require, this court requires defendants to have specific, with appropriate precision, direction as to what actions will constitute a violation of supervised release. That's what the rule requires. I understand. You must do that. But if you're talking about a procedural error, isn't it up to counsel to say, judge, you're not following the procedure. We need a little more time here. Or else you read it to us. Your Honor, again, I would disagree that we are under a plain error standard. At most, we are under a relaxed plain error standard. There are cases that we've cited in our brief. And again, the question becomes, while I recognize that defense counsel did not raise an objection at the time, the district court, when they came out of that break, they took a break in the middle of the sentencing, so that the court could collect its thoughts and so that defense counsel could review the conditions. And when they came out of the break, the court said to defense counsel, have you read the conditions? And he said yes. And we don't know how long the break was. And then the district court said to the government, have you read the conditions? And they said yes. But at no point did anybody say to Chelly himself, did you read the conditions? Do you understand what these conditions are? Are you satisfied with the explanation by your lawyer? Do you have any questions for the court? Do you have any questions about the language? And that is what was necessary under these circumstances, especially under these circumstances. Before your time is up, what do you want to say about whether the conditions are unlawful? We maintain our objection with respect to the five conditions, all of them relating to the very sacred relationship between defense lawyers and their clients that require the defense lawyer to review the client's pleadings to see if there's a threat, and the word threat is nowhere defined. The term file your pleadings in an appropriate way, the term an appropriate way is not defined. Reviewed by counsel is an illegal condition of- I'm sorry, Your Honor. Could you say- Of any other communication is an unlawful condition? I'm saying that a defense lawyer has an obligation to represent his or her client, period. Well, we don't know that. Not to- But aren't you attacking the condition that any other communication be shown to counsel? I'm attacking the conditions that require defense counsel not simply to review, but to approve a filing before it is filed. Within 14 days, and by the way, the 14 days, I guess it's within 14 days- What exactly is the problem with that? I'd like to understand it better. It's actually protecting a client. If the counsel reviews it. To make sure that the client doesn't cross the line. Well, first of all, it's forcing a defense lawyer to wear two hats. Because now I'm in a position, let's say it's me. Now I'm in a position where- Counsel do that all the time. They advise their clients what they can do and what they can't do. Because one is going to get them into trouble or not. Okay, just before I forget, it's not just the defense lawyer that's playing this role. It's probation also that has to play this role. Because probation has to receive the complaints before they're filed as well. But it's not the defense lawyer's job to say to the defen- Excuse me, it's not the defense lawyer's job to say to probation or anybody else, no, this is not acceptable. And so if the defendant gives the defense lawyer a document, let's say a complaint about a judge or a complaint about a prosecutor. And in defense counsel's mind, there is arguably a threat, however we want to define that term because it's not defined in the special conditions. Now what the defense lawyer needs to do is go back to Chelly and say, no, it contains a threat. And then what happens? I mean, I'm asking that not just rhetorically, but the special conditions don't say then what happens. Is there a review? Is there an appeal? Is there an opportunity for Chelly to say, no, I disagree with you, Mr. Defense Lawyer, who, by the way, this is a defendant, again, who misperceives reality to such an extraordinary extent that he has 11 court-appointed lawyers at this point. He has been unable to accept any of the lawyers appointed by the court. And going in, the ninth lawyer who remains his lawyer to this day, one of the two lawyers in the district court currently, that sentencing lawyer had twice filed letters with the district court saying, Mr. Chelly wishes to proceed pro se. He's dissatisfied with my counsel. So how do we think that Mr. Chelly is going to be able to comply with this very unique, definitely well-intended, but ultimately unworkable process? Well, working backwards a little bit, weren't all of these conditions in the plea agreement or agreed to after the plea and discussions thereafter? Seven conditions. There were eight conditions in the plea agreement. Well, really, there were seven. Of those seven conditions, defense counsel modified six of them or five of them. There was one that remained. The modification was accepted, right? That was the modification. Accepted by whom, Your Honor? That was what ultimately got into the final agreement. Well, there was never a point that Lucio Chelly said, yes, I accept this. Remember, in the plea agreement, Lucio Chelly was asked, this is the plea agreement. Did you read it? Yes, I did. Do you understand it? Yes, I did. Do you have questions? No, I don't. At the sentencing, now he's got modified conditions of supervised release, different from the ones that were in the plea agreement. At that point, the district court should have said, do you understand these? Do you accept these? Or at least orally impose them. Was there any question about Chelly being aware of them? There is a question about Chelly being aware of them because there's no evidence in the record that Chelly read his defense lawyer's memorandum or even received the defense lawyer's memorandum. And if you look at the defense memorandum, there's a CC line, and missing from the CC is the defendant. Look, that's not proof that he didn't receive it. But there is no proof in the record that he did. There's no proof in the record that he read it. There's no proof in the record that counsel reviewed his sentencing memorandum with Chelly. And again, there's no proof in the record that Chelly read any of this prior to the day of sentencing or even at the sentencing. Putting that aside, apart from questions of acquiescence, what's wrong with these jurisdictions, given the circumstances of this case? With respect, and Your Honor is asking me about the- We've got a bunch of them here, I know, but pick your best case for one that shouldn't have been included. I'll start, that's actually an easy one, Your Honor. I'll start with the one that probation objected to, that nobody commented on. One of the conditions says that probation has to receive Mr. Chelly's civil complaints at least 14 days before he files them. That is- Seven. Yes. Defendant is obligated to provide complaints for any new civil lawsuits to probation at least 14. What are they supposed to do with it? It begs the question, what does probation? Probation officers are terrific. They are excellent at what they do. They're not lawyers. They're not qualified to render- Take whatever action they think is appropriate under the circumstances, if they find that it's a threat. That's not what this says, Your Honor. No, I know it doesn't say. Okay, so that's an answer to the court's question, is that's one. But what does he care? It just says he's got to provide them. Why is that in some way unlawful? Under Carlinio, the probation department has certain limitations. It has to have authority over the defendant. It has to have the ability to do something with the special conditions, and the fact- It's unclear what they're supposed to do with it, Judge Newman. What's a threat? Well, that's the whole essence of- Unlike counsel, counsel is supposed to certify that it's not a threat, right? That's under four. Counsel is, yes. But seven doesn't say probation must certify that it's not a threat. All it says is he's got to hand it to them, provide complaints, 14 days before he intends to file them. Well, first of all, I don't think actually Mr. Chelley can give anything to anybody. I think he's got to do it through counsel. So, again, we're back to counsel is now taking a document that counsel thinks- That's fine. So counsel does it. Well, Your Honor, that's only if counsel thinks it doesn't contain a threat. That's four. You're complaining about seven at the moment. I was responding to the court's question. Give us one that you have a problem with. We have five that we've pointed out. Right, and I thought you picked out seven. I did. I did. Yes, Your Honor, I did. Okay. But, again, the problem is how probation receives that document. From whom they receive that document. And so? And so it puts defense counsel in the position of taking a document. By the way, the defense lawyer who is the ninth in the case, who Chelley has twice said, I don't want this guy to represent me. It puts that defense lawyer in a position of either saying to Chelley, no, you can't file this, or taking a document that he thinks contains a threat and giving it to probation, in which case he's now given probation reason to file a violation of supervised release. That's not the function of defense lawyers. And, by the way, this is a defendant who had shown, had demonstrated an inability to comply with the conditions of release even before the day he was sentenced. At the beginning of sentencing, the district court commented, I have two complaints from probation that he violated the terms of his release. It's almost set up to fail. And it's certainly set up to sabotage the relationship between the lawyer and his client. Is he now at Budner? Your Honor? Is he now at Budner? He is actually now at FMC in Lexington. Oh, in Lexington. In Lexington. The Bureau of Prisons has six days from now to finish its examination and has a deadline from the court October 10th to file its report. Now, if he's turned out to be in, well, let me ask it this way. Are they making a determination, was he incompetent at the proceeding? You know, my understanding, and I will defer to my colleague who's counsel in the district court, my understanding is that this report is designed to inform the district court's sentence on the violation of supervised release. It is not a competency evaluation. It's just a general assessment of his condition that the court can then take into account. That's correct. That's my understanding, Your Honor. Thank you. All right.  Thank you. May it please the court. My name's Anna Karamigios. I'm an assistant United States attorney in the Eastern District of New York, and I also represented the government in the district court. Lucho Celli avoided further imprisonment for threatening to kill two federal judges by actively soliciting the special conditions of release that he's now seeking to challenge on appeal. Well, is that, I'm going to jump in right there, because the conditions that were the final version of the conditions in Exhibit A or what have you, those were not the conditions that were in the plea agreement. Your Honor, yes, but the four conditions, four or five conditions that Celli challenges on appeal were in the plea agreement in substantially similar form. As Your Honor pointed out, in the sentencing submission, counsel for Celli requested to slightly modify those conditions. All the changes that were made were that there were time limits placed on when Celli had to submit filings to counsel into probation, and actually another condition was modified to be more permissive in that it allowed Celli to file materials that were approved by his counsel on his own in an appropriate way, which means however you're supposed to file something in court, per se, be it dropping it at the clerk's office or mailing it. But wasn't the final, I mean, we have the conditions as stated in the plea agreement, and then we have defense counsel's sentencing memorandum, and then we have what the district court did, his interpretation of synthesizing and summarizing all that. So that final version on the day of sentencing that was presented midway through, there was definitely not prior notice of those precise conditions. Is that correct? I don't think that's correct, Your Honor. With respect to the specific conditions that he's seeking to challenge on appeal, those, if you read defense counsel's submission that slightly modifies the conditions as they were laid out in the plea agreement, and you compare it to the final judgment, what Judge Engelmeyer did was lift essentially from defense counsel's sentencing submission those conditions verbatim to the point where a typo that appeared in the sentencing submission also appeared in the draft that Judge Engelmeyer distributed at sentencing. And so despite defense counsel's representations about how significantly they changed, I think the record reflects that they were not significantly modified and that Judge Engelmeyer imposed the conditions as laid out by defense counsel in the defense sentencing submission. Can I just ask, though, in terms of this first of the sort of procedural question of the fact that the conditions were not read into the record of sentencing, and these particular conditions there was not prior notice prior to sentencing of them, doesn't our decision in Washington suggest that that does require remand? Because in Washington, in fact, the conditions were set out in the presentence report where the district court essentially intended to adopt all of those but in fact did not read all of those conditions, and we held under de novo review that that was a problem. I'll speak to the standard first, Your Honor. I think that Washington doesn't change that plain error review would apply to the procedural claim. It didn't play de novo review in Washington? They applied de novo review in Washington, Your Honor, but Washington also acknowledges that when a defendant has notice of the procedure that a court intends to employ and fails to object, plain error review applies. Washington says that. Those weren't the facts in Washington, but they are the facts here. When Judge Engelmeyer took the bench, he announced that he was handing out the special conditions of release he intended to impose. But it's not just about notice of the procedure. It's about notice of the conditions. Isn't that what the concern is, that when these special conditions, when conditions that are not the mandatory or the standard or administrative, when they're going to be imposed, the defendant is supposed to have notice of those conditions? Your Honor, I think it depends which claim we're analyzing. If we're analyzing the procedural claim, that the conditions weren't orally pronounced as defense counsel claims, I think the relevant inquiry is whether the defendant was on notice of the procedure that was going to be employed and failed to object to it. With respect to the merits of the conditions. But I think there's another question. It's not just the procedure. I think there are two sort of procedural parts to this. It's the idea of you are supposed to have notice of these special conditions before they're imposed. They're supposed to be announced at sentencing, and part of the reason for that is if then, as happened here, what is in the written judgment is greater than what was pronounced at sentencing, then that's the problem. Because we say that what happens at sentencing controls, and you've got this written judgment that says a lot more than what was said at sentencing, I think that's the problem as well as the idea of notice of the conditions in advance. Your Honor, I understand. And even putting aside whether the court finds that he had prior notice of the special conditions that were imposed, I think what Rule 43 requires, what this Court's precedent has stated, particularly in United States v. Thomas, is that all that's required of a sentencing judge is to articulate the special conditions with appropriate precision. Here, Judge Engelmeyer could not have been more precise with respect to what conditions he intended to impose. I'm sorry, but it's precision to say, well, I've handed something out, and I'm not going to go through what I think the language you used, some long death march, and read all this out. You've got the paper. That's precision? Yes, Your Honor, because what Judge Engelmeyer did was hand them out, and then in the middle of the sentencing proceeding, he held a recess. I was there. It was long. We had ample time to review the special conditions that he intended to impose. When he took the bench again, he confirmed that everyone had had sufficient time to review the conditions. He didn't confirm, though, that Mr. Chelley had – did he ever question whether or not Mr. Chelley had read the conditions? No, Your Honor, but as Your Honor stated, Chelley was represented by counsel who was tasked with raising any objections to the special conditions, which he, in fact, did. He had corrections for Judge Engelmeyer. At no point did anybody say they hadn't had sufficient time to impose the conditions. To the opposite end of the spectrum, counsel all confirmed that we had had sufficient time. We both raised corrections, and then Judge Engelmeyer moved on with the proceeding. Let me raise it slightly differently. This is a fellow who, there's a fair likelihood, will violate the conditions of probation. I mean, he's an unstable fellow. He's got problems. It's certainly not out of the question that he will, at some point, violate the conditions. Fair? Yes, Your Honor. Okay. When that happens, and it's a previous point, I take it whenever there's a dispute between the written judgment and the oral, the oral applies, right? That's right, Your Honor. That's basic law. That is. So thinking ahead, if he's brought in in the future for violating a condition, isn't that district judge going to have a bit of a problem knowing what the sentence is? Because he's going to say, well, I'm supposed to look at the oral pronouncement, and here there isn't one. What does he do then? What does the judge do? Never mind Mr. Chelly. What does the judge do? Well, Your Honor, Judge Engelmeyer did docket the court's Exhibit A that we were provided during the sentencing proceeding. So that's memorialized on the docket. And again, if you compare it to the ultimate judgment, they're identical. And so that's what the district judge can do, is look at the- What's identical? It's identical with what? The court's Exhibit A that was passed out to the parties during the sentencing proceeding is identical to the special conditions that are contained in the judgment. Yeah, but- Yeah, but that's- One writing is the same as another. That's what you're saying. And that the writing was given to the parties at the sentencing proceeding and incorporated by reference. At this hypothetical next revocation proceeding, certainly a defense counsel is going to say, Judge, you can't revoke him because he didn't violate the oral pronouncement of sentence because there was none. Certainly defense counsel is going to say that. It may be true or not. It may be a winner, but he's going to say that, right? At the violation hearing that ultimately did ensue, Your Honor, no allegation like that was made. Everybody understood what the special conditions were. Yeah, but that's before we had a whole big hearing about whether there was a defect for lack of oral announcement. Now the lack of oral announcement is front and center. Before this court, yes, Your Honor, but in the district court- Well, and in the mind of defense counsel who's here. Yes, Your Honor. So I'm still wondering what is the next district judge going to do at a revocation hearing when the claim is made, he didn't violate the oral announcement because there was none. And I'd submit to Your Honor that what that district judge can do is read the transcript of the sentencing, look at court exhibits A, which was incorporated by reference during the sentencing proceeding, and provide it to the parties for their review. What I guess I'm suggesting is aren't you, the government, better off if you get it orally read now so that there's no question about a revocation proceeding later? Your Honor, we certainly wouldn't object to a remand to have these read out loud in district court. I'd submit that it's not necessary because under the plain error standard of review, which we do submit applies- I'm suggesting you're better off if you get that. Understood, Your Honor. I'm saying you're willing. It has not been an issue in the district court proceedings, including during the violation hearing, Your Honor, but I do understand what Your Honor is saying, and we would not object to a remand to read the special conditions out loud. Unless the court has further questions, I'll rest on my submission. Okay, thank you. Respectfully, it should be more than just a mechanical rereading of the special conditions. What else would it be? I would rely on United States v. Handakis, 329 F. 3rd. 115, in which this court concluded that the omission of the condition from the oral sentence was error. The error was probably harmless, but it would be prudent to remand the sentence to afford the district court an opportunity to reconsider in position of the employment condition. That was one condition. Here we have 17. So the remand order in our position is that the remand order should not be simply a mechanical rereading of these conditions, but give Chelley, through his counsel, an opportunity to object. See, that's where you worry me a bit, because if you want him to reconsider, he, the defendant, to reconsider, that sounds like the plea is uncertain. Well, if he wants to reconsider those conditions that were in the plea agreement, I agree. But there's plenty of others. So if he hears them and says, gee, I don't like those at all, I'm not accepting those, then what, does he withdraw the plea? Well, that really is for the parties to raise before the district court. Then he's taking an enormous risk. Does he understand that? Your Honor, I am not in a position to answer the question of what Mr. Chelley understands. Would you be here today if Judge Engelmeyer had read out these conditions in court? I would be here today, but with .2 of my brief, period. I would be here today to point . . . Saying they're too burdensome. Pardon me, Your Honor? Saying that they're too burdensome, or they . . . Saying that they're vague, they're overbroad, they're burdensome, they accord excessive discretion to probation, and they unduly and impermissibly encroach upon the sacred relationship between a defendant and his lawyer. Only with respect to those five conditions out of 31, which is some, but not most. All right. Unless the court has any further questions. Notwithstanding the fact that they were agreed to and incorporated in the document that was the exhibit to the proceedings. Then maybe we're under plain error review. Notwithstanding that, Your Honor, that's a fair comment. And again, I'm back to this is a defense lawyer who negotiated this on behalf of a defendant who said, I don't want to be represented by this guy or the 11 other people who have been appointed to represent me. Thank you. Thank you. We'll take the case under advisement. And that concludes our cases on the calendar for argument. We have one additional case on submission, which is Brian B. Fleet Bank, 2143. Consider that one. But with that, I'd like to thank everyone for coming out today. Thank the court family and officers, marshals, everyone for helping run things. And with that, we are ready to adjourn.